IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYLVIA ANN ROBERTS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No. H-06-2132 |
| v. | § | |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner, Social Security | § | |
| Administration | § | |
| Defendant. | | |

**MEMORANDUM AND ORDER**

Plaintiff appeals from a denial of Social Security disability benefits. Plaintiff and Defendant have each filed a Motion for Summary Judgment. After considering the filings, the applicable law, and the oral arguments, the Court finds that Plaintiff's Motion (Docket No. 9) should be **DENIED**, and Defendant's Motion (Docket No. 7) should be **GRANTED**.

I.      **BACKGROUND**

Plaintiff Sylvia Ann Roberts, who was born in 1952, applied for disability benefits under Title II of the Social Security Act in July 2003. Plaintiff's application was denied initially and on reconsideration, and she timely filed a request for hearing. (R. 16.) A hearing was held in September 2005, before an administrative law judge (ALJ). At the hearing, Plaintiff, her husband, and a vocational expert testified. (R. 16.) The ALJ denied her request for disability benefits.

Plaintiff appealed and the Appeals Council denied her request for review in May 2006. (R. 5.) The Appeals Council had before it letters from Dr. Phil Waller and Dr. Kim Bloom, who were among Plaintiff's treating physicians. Although other reports from these physicians were before the

ALJ, these particular letters were written after the ALJ's hearing. The Appeals Council stated, "The Administrative Law Judge decided your case through March 31, 2003, the date you were last insured for disability benefits. This new information is about a later time." (R. 6.)

Plaintiff had long worked as a nurse. (R. 531.) She was involved in an automobile accident in March 1997, however, in which her back was injured. She returned to work on light duty, but in July 1997, she re-injured her back at work trying to move an arthoscopic monitor. (R. 532-33.) Plaintiff has not worked since July 1997. (R. 533.) The ALJ concluded that Plaintiff could not return to her work as a nurse, but that she could undertake other work. Specifically, based on a hypothetical question that the ALJ had asked the vocational expert, the ALJ found that Plaintiff could work as a medical equipment rental clerk, diet clerk, tumor registrar, and biology specimen technician. (R. 23.)

The ALJ did find that Plaintiff had three severe medically determinable impairments: degenerative disc disease, asthma, and fibromyalgia. (R. 23.) The ALJ noted, however, that "the testimony concerning subjective symptoms and functional limitations is not wholly credible or supported by the evidence as a whole insofar as the claimant alleges an inability to perform all work activity including a limited range of sedentary work." (R. 23.)

## II.   ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

### B. Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") A person claiming a disability must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). In this case, the Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before March 31, 2003.

> The Court evaluates a disability claim via a five-step process, as follows:
>
> (1) a claimant who is working engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). The claimant bears the burden of proof through the first four steps, and the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### D. Plaintiff's Claim

With respect to Plaintiff's claim, the Court finds that substantial evidence supports the ALJ's conclusions, and that the ALJ properly applied relevant legal standards.

### 1. The Five-Step Process

In his decision, the ALJ agreed that, as to step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period. At step two, the ALJ found that Plaintiff had severe degenerative joint disease, asthma, and fibromyalgia. (R. 23.) At step three the ALJ found that Plaintiff's impairments, singly or in combination, do not meet or equal in severity the medical criteria for any impairment described. (R. 23.) At step four the ALJ found that Plaintiff retains the residual functional capacity for a sedentary level of exertion. He found that Plaintiff can lift ten pounds occasionally and five pounds frequently, and walk for at least four of eight hours. The ALJ also found that Plaintiff requires the option of sitting or standing, has normal gross dexterity in her hands, and limited fine dexterity. The ALJ found no limitations in Plaintiff's abilities to push or pull. Because of her asthma, Plaintiff must work in a climate controlled environment reasonably free of gases, fumes, and chemical odors. The ALJ further found that Plaintiff is only able to do limited bending or stooping, and is unable to crouch, crawl, or climb ladders or ropes. Lastly, the ALJ found that Plaintiff is capable of maintaining the necessary level of activity for significant periods of time. (R. 23.) At step four, the ALJ found Plaintiff incapable of performing her past relevant work as a nurse. At step five, the ALJ listed the available jobs that Plaintiff could perform. (R. 23.)

### 2. Plaintiff's Pain Symptoms

Plaintiff's work history does not suggest an individual who wishes to avoid work or who tends to overstate her medical problems. She appears to have worked as a nurse for most of her adult life preceding her injuries. After her automobile accident in March 1997, she chose to return to work quickly. Only after her on-the-job injury in July 1997 did Plaintiff stop working. (R. 531-33.)

Before this Court, Plaintiff's principal argument is that the ALJ did not properly consider

Plaintiff's pain relaying to fibromyalgia. This is a condition, however, from which Plaintiff has suffered since 1990. (R. 429.) It did not prevent her from working prior to 1997. Moreover, Plaintiff's proof as to the degree and nature of that pain is, perhaps necessarily, almost entirely subjective. One of her primary treating physicians, Dr. Kim Bloom, noted more than once that he found it "hard to separate subjective complaints and objective findings . . . ." (R. 333, 336, 338.) The ALJ, who had the opportunity to observe Plaintiff and her husband, noted, "The claimant did not seem to be in pain or discomfort during the hearing." (R.21.) The ALJ did acknowledge that Plaintiff has some pain and discomfort, but he found such symptoms "to be mild to moderate at most." (R. 21.) In the Fifth Circuit, pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994).

No physician who examined Plaintiff prior to the ALJ's decision stated that she was unable to work. Plaintiff does point to a notation of Dr. Andres Keichian, a neurologist, in 2002 which simply noted, "No work." (R. 256.) From the context, however, it is not at all clear that the statement conveys anything other than the undisputed fact that Plaintiff was not, at that time, working. Further, Dr. Keichian did not examine Plaintiff, but only reviewed Plaintiff's records at the request of another person, perhaps an insurance company employee. Dr. Keichian would not, therefore, have likely been in a position to conclude that Plaintiff could not work.

Based on the extensive record, the ALJ noted that Plaintiff "has no neurological deficits, no significant orthopedic abnormalities, and no serious dysfunctioning of the bodily organs that would preclude sedentary work." (R. 20.) The record does include a magnetic resonance imaging (MRI) exam on July 30, 1997, which showed no significant cervical or thoracic damage. (R. 82.) An MRI

of Plaintiff's lumbar spine and sacrum on October 17, 1997, likewise revealed no injury that would qualify as disabling. (R. 92.) In 2001, Dr. Mool Nigam, who is board-certified in psychiatry and neurology, concluded that Plaintiff had reached maximum medical improvement and found that her "Whole Person Impairment" was nine percent. (R. 121.) Also in 2001, a CT scan of Plaintiff's chest showed "no significant abnormality." (R. 307.)

Although Plaintiff can point to aspects of the record that document her subjective feelings of pain, those do not show that the ALJ's decision was based on less than substantial evidence. The most supportive evidence that Plaintiff has adduced are letters from treating physicians that were written after the ALJ's decision. Two of these letters, as already observed, were before the Appeals Council. The third is from Dr. Jaime Ganc, a board-certified neurologist and psychiatrist, was written after the Appeals Council issued its decision, and is attached as an exhibit to Plaitniff's brief. The timing of all these letters is curious. So, too, is the fact that the letters of Drs. Bloom and Waller are hard to reconcile with their earlier reports in the record. Dr. Waller, for example, states that "the patient is disabled now and will be disabled forever." (R. 521.) Dr. Waller said nothing remotely like this during earlier reports. Further, this statement of disability does not appear to have been based on a new examination of Plaintiff. Finally, the conclusory nature of Dr. Waller's statement is exactly the kind of statement, even from a treating physician, that the ALJ is not required to give "special significance." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Dr. Bloom's statement of disability, if that is what it was meant to be, is also conclusory and appears to have come almost eighteen months after she last examined Plaintiff. (R. 328-29.)

Dr. Ganc's report is based entirely on one evaluation of Plaintiff in June 2006 and the Court is unable to conclude that his findings are applicable to the period ending March 31, 2003, which

is the pertinent date for Plaintiff's appeal. Again, the Court is also unable to conclude that these reports demonstrate that the ALJ's decision was not based on substantial evidence.

### 3. Effect of Medications

Plaintiff also notes that the ALJ failed appropriately to consider the cumulative effect of the medications she was taking. Once more, however, none of Plaintiff's treating physicians said that Plaintiff's medications kept her from working. One of her primary physicians, Dr. Bloom, indicated she was taking too many medications and should reduce the number. (R. 337-38.)

### 4. Alleged Mischaracterization of Plaintiff's Testimony

Plaintiff complains that the ALJ mischaracterized her testimony as to whether she was able to clean her home. (R. 20.) Plaintiff did testify that it had "been a while;" "It's been pretty long," since she cleaned her home. (R. 548.) She did indicate, however, that she did the laundry sometimes and could drive a car, although she seldom did so. Plaintiff also testified that she composed greeting cards on her computer (R.548-50.) Whatever error may have been committed in connection with Plaintiff's testimony about house cleaning does not vitiate the ALJ's decision.

### 5. Plaintiff's Depression

The record before this Court demonstrates that Plaintiff took anti-depressants during the relevant time frame. None of Plaintiff's physicians, however, indicated that her depression was so severe as to keep her from working. Even Dr. Ganc, in his report made after the Appeals Council decision, said that her medication "seems to have decreased her depression to a manageable level." (Pl.'s Br. Ex. A at 2.)

## IV. CONCLUSION

On a review of Plaintiff's extensive medical history, the Court is unable to say whether, if it were reviewing *de novo*, it would agree with the ALJ's decision. That, however, is not this Court's task. Rather, the Court is asked only to determine whether there is substantial evidence for the decision and whether it was in accord with applicable legal principles. On this review, the Court has insufficient reason to disturb the ALJ's findings and conclusions. Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

SIGNED at Houston, Texas on this ____5th____ day of July 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE